**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARENCE VAIDEN LITCHFIELD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:21-cv-5068-JDW** |
| | : | |
| **KYLE RUSSEL,** *et al.* | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

Clarence Vaiden Litchfield complains for a second time about Covid-19-related lockdowns at Lehigh County Prison ("LCP"). After review, the Court concludes that his Amended Complaint does not state a plausible claim of constitutional violation, so the Court will dismiss the Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      FACTUAL ALLEGATIONS**

Mr. Litchfield has been confined at LCP as a pretrial detainee since August 31, 2021.  Throughout his time at LCP, he has been subjected to a "super restrictive lockdown procedure in the name of covid measures" and that "restrictive confinement by nature is a punishment used to deter negative behavior."  (ECF No. 8 at § V.) The lockdown follows Covid-19 guidelines that the Bureau of Prisons issued COVID, which included a restrictive cell confinement upon the identification of COVID for a period of "14 to 21 days, 22 to 23 hrs. a day."  (*Id.*) LCP has had the restrictive lockdown procedure "in place for two years" as opposed to the guideline period of fourteen to twenty-one days.  (*Id.* at p. 5.)

Mr. Litchfield suffers from pre-existing mental health disorders that have the restrictive confinement at LCP has exacerbated.  He suffers from nightmares, extreme paranoia, suicidal ideations, homicidal thoughts, extreme depression, anxiety, and post-traumatic stress.  Mr. Litchfield claims that at least three prisoners have been unresponsive after suicide attempts and that Warden Russel and Director Donate "should have been aware of the devastating effects of imposing involuntary long term confinement."  (*Id*.)

After the Court dismissed his original Complaint, Mr. Litchfield filed an Amended Complaint on March 2, 2022. He names as defendants Warden Russel, Director Donate, and the Lehigh County Commissioner and the Lehigh County executive. He seeks monetary relief in the amount of $10,000,000, as well as injunctive relief, because of the "metal anguish, pain and suffering, [and] duress" he has suffered from the "tourturous [sic] lockdown."  (*Id*. at § VI.)

## II.    STANDARD OF REVIEW

Because Mr. Litchfield is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the amended complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotations omitted).  Mr. Litchfield is proceeding *pro se*, so the Court

construes his allegations liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021)

III.   **DISCUSSION**

The vehicle by which federal constitutional claims may be brought in

federal court is Section 1983 of Title 42 of the United States Code, which provides

in part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States
> or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under

color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a §1983 action, the

personal involvement of each defendant in the alleged constitutional violation is

a required element, and, therefore, a plaintiff must allege how each defendant

was involved in the events and occurrences giving rise to the claims.  *See Rode*

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

As it appears that Litchfield was confined as a pretrial detainee at the time

of the events in question, the Fourteenth Amendment, rather than the Eighth

Amendment, governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir.

2005).

3

### A.      Individual Capacity Claims

Mr. Litchfield seems to claim that Defendants are responsible for the "super restrictive lock down" conditions that amounted to unconstitutional punishment. (ECF No. 8 at § 5.) But he has not alleged that the lockdown measures amounted to unconstitutional punishment and, even if he had, he has not alleged how these Defendants were personally responsible for the conditions upon which his claims are based.

### 1.      Unconstitutional punishment

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment includes both objective and subjective components. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious," and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (cite omitted). A particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quote omitted). In assessing whether a detainee's conditions of confinement amount to punishment, courts should consider the totality of the circumstances, while keeping in mind that conditions

4

generally do not amount to punishment unless inmates are required to endure "genuine privations and hardship over an extended period of time." *Hubbard*, 538 F.3d at 233 (quotes omitted).

"In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts must keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3. The deference to prison officials' judgment is especially strong in the context of an "unprecedented" situation like COVID-19, where "responsive measures [were] specifically implemented to detect and to prevent spread of the virus." *Hope v. Warden York County Prison*, 972 F.3d 310, 327 (3d Cir. 2020).

Where a prison has taken concrete steps towards mitigating the medical effects of COVID-19, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus, even if a prisoner had serious preexisting medical conditions the prisoner may have. *See Id.* at 330-31. Mr. Litchfield does not overcome this high bar. He alleges that the lockdown at LCP exacerbated his pre-existing mental health disorders. But he has not alleged facts to establish that the conditions that prison authorities imposed were anything other than what was necessary to arrest the spread of the virus. He has not alleged facts that might establish that anyone was deliberately indifferent to his medical needs.

5

### 2.      Personal involvement of the County Executive

Mr. Litchfield does not assert facts supporting an inference that the Lehigh County Executive was personally involved in the constitutional deprivation. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207. The Amended Complaint does not include any facts about the County Executive. And Mr. Litchfield's use of the terms "LCP staff" and "they" does not attribute any conduct to any individual defendant. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014). Because Mr. Litchfield does not allege how the Executive was involved in the alleged violation of his constitutional rights, the claims against him are not plausible.

### 3.      Supervisory Liability

Mr. Litchfield's claims against Warden Russel, Director Donate, and the Lehigh County Commissioner appear to rest on a theory of supervisory liability. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (cleaned up). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or,

as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Mr. Litchfield has not alleged facts to state a plausible claim under either theory of supervisory liability. In fact, other that naming them as Defendants, Mr. Litchfield has not set forth any allegations that plausibly allege any Defendant, though a particular action or inaction, violated his constitutional rights. He has not specified any personal conduct, nor has he alleged that any Defendant directed their subordinates to violate his rights or knew of but acquiesced in constitutional violations committed by their subordinates. A mere claim that one or more Defendants did not train, supervise, or discipline subordinates does not show that a defendant was aware of the violations that Mr. Litchfield alleges. *See Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011).

There are also no allegations in the Amended Complaint supporting an inference that any Defendant established and maintained a policy that directly caused Mr. Litchfield's constitutional harm. A Warden or Director cannot be held liable "simply because of [their] position as the head of the [agency]." *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quote omitted). In other words, Litchfield needs to allege more than just "naked assertions" that Russell and Donate "should have known" or that the Commissioner as "the employer" is generally responsible for the policies at the facility and, by default, were deliberately indifferent to the consequences of their policies. *Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010).

The allegations against these Defendants are brief and conclusory and do not provide enough factual development to support a plausible claim that their actions resulted in the conduct that allegedly violated Litchfield's constitutional rights.  Without further factual allegations about what these Defendants did or did not do, Litchfield is unable to state a plausible § 1983 claim against Warden Russell, Director Donate, and the Commissioner.

### B.      Official Capacity Claims

To the extent Mr. Litchfield intends to pursue claims against the Defendants in their official capacities, these claims fail.  Claims against municipal and county officials named in their official capacity are indistinguishable from claims against the entity that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Lehigh County employed Defendants, so any claim against them in their official capacities is really a claim against the County.

To state a claim for municipal liability under § 1983, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quote omitted).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute

8

law." *Id.* (quote omitted).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Nothing in the Complaint alleges that the conditions or conduct of which Mr. Litchfield complains was the result of a municipal policy or custom.  Although he generally alleges that "they [have] fail[ed] to adequately train their staff on the protection of civil rights," this unsupported conclusory allegation is insufficient to allege a plausible basis for municipal liability.

## IV.    CONCLUSION

The Court will dismiss Mr. Litchfield's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court has given Mr. Litchfield an opportunity to file an amended pleading, and that amendment did not cure the problems with this case. In addition, the Court has reviewed the docket in its entirety and concludes that further attempts at amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019). The Court will therefore dismiss the claims with prejudice.  An appropriate Order follows

BY THE COURT:

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

May 6, 2022